1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RAKHAT BAISHYMYROV,                    No.  1:25-CV-01658-DMC (HC)

12                    Petitioner,            MEMORANDUM OPINION AND ORDER

13        v.

14   WARDEN OF THE GOLDEN STATE
     ANNEX DETENTION FACILITY,[1] et. al.,
15
                      Respondents.
16

17

18              Petitioner, an immigration detainee who is proceeding pro se, filed a petition for a

19   writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pursuant to the written consent of all parties,

20   ECF Nos. 6 and 8, this case is before the undersigned judge for all purposes, including entry of a

21   final judgment.  See 28 U.S.C. § 636(c); see also ECF No. 9 (consent order).  Pending before the

22   court is Petitioner's petition for a writ of habeas corpus, ECF No. 1. Respondents filed an answer,

23

24   ---

     [1]        Respondents move to dismiss all unlawfully named officials. See ECF No. 1, pg. 1, n. 1.
25   The proper respondent in habeas cases is the "warden of the facility where the prisoner is being
     held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla,
26   542 U.S. 426, 430 (2004). In § 2241 cases involving non-citizens detained at a private detention
     facility, the proper respondent is the warden of the private detention facility. Doe v. Garland, 109
27   F.4th 1188 (9th Cir. 2024). Petitioner has properly named their immediate custodian, Warden of
     the Golden State Annex. If Respondents seek to dismiss the other Respondents from this action,
28   they must do so in a properly noticed motion.

                                                1

1    ECF No. 7, and Petitioner filed a reply, ECF No. 10.

2

3                                    **I. BACKGROUND**

4              Petitioner asserts that they have been detained by Immigration and Customs

5    Enforcement (ICE) at the Golden State Annex Detention Facility since December 18, 2024. See

6    ECF No. 1, pgs. 2-5. According to Petitioner, Petitioner is Dungan nationality and a citizen of

7    Kazakhstan. See id. at 5. Petitioner asserts that they have no criminal record and are seeking

8    asylum because they "face imprisonment and death in my country because of my nationality and

9    political opinion."  Id. Petitioner explains that they were "beaten and threatened in my country

10   until I left in 2024." Id. According to Petitioner, the conditions in detention are "very hard for me

11   physiologically." Petitioner states that they are the only Dungan there, they suffer headaches, are

12   unable to sleep normally, the food is sometimes spoiled, and it is challenging to receive medical

13   care. See id. at 5-6. Petitioner asserts that these conditions "cause me constant stress, severe

14   anxiety, and depression, which prevents me from properly preparing for trial and defending my

15   case." Id. at 6. Petitioner additionally states that because they cannot afford an attorney, access to

16   legal resources are limited and they are responsible for gathering all the relevant documents

17   themselves. See id. Petitioner asserts that they are "very afraid of being deported to my country,"

18   and is willing to "agree to any conditions of release and any form of monitoring . . . if released, I

19   will go to my sponsor who will provide for and support me at [address in Austin, Texas,

20   omitted]." Id.

21             Petitioner contends that their detention is in violation of Petitioner's Fifth

22   Amendment right to Due Process because "detention without a bond hearing is unconstitutional

23   when it exceeds six months." See id. at 8. Petitioner requests a determination that such detention

24   is unlawful or an order to release Petitioner unless a hearing is scheduled in front of a neutral

25   decisionmaker where the government must "establish by clear and convincing evidence that

26   Petitioner presents a risk of flight or danger," or the neutral decisionmaker order Petitioner's

27   release with "appropriate conditions of supervision." Id. at 2.

28   / / /

                                            2

1    In their opposition, Respondents contend that Petitioner is properly detained under

2    8 U.S.C. § 1225(b)(1) while removal proceedings are pending and such detention is comparable

3    to detention under § 1226(c), which "'has a definite termination point: the conclusion of removal

4    proceedings.'" ECF No. 7, pg. 3 (quoting <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 304 (2018)). In

5    support of this argument, Respondents cite the Supreme Court holding that "that immigration

6    detention can be constitutional even in the absence of any showing that an individual detainee

7    posed a flight risk or a danger to the community." <u>Id.</u> at 4 (citing <u>Demore v. Kim</u>, 538 U.S. 510,

8    526 (2003)). Respondents acknowledge that "multiple district courts have disagreed with

9    [Respondents'] interpretation of § 1225 as relevant here." <u>Id.</u> n. 2.

10    Respondents next argue that if this Court finds the petition should be granted, "the

11    only appropriate relief is a bond hearing, not release from detention." <u>Id.</u> at 4 (citing <u>Denmore</u>,

12    528 U.S. at 532.). Respondents contend that if such hearing is ordered, it would be improper to

13    require "the government to justify his detention by clear and convincing evidence." <u>Id.</u> at 5.

14    Respondents rely on the Supreme Court holding in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001),

15    asserting that the burden is "on the noncitizen, not the government, to show that his detention was

16    unjustified." <u>Id.</u> Respondents further cite <u>Diaz</u>, to support their argument that "the burden at any

17    such bond hearing is properly placed on [Petitioner]." <u>Id.</u> at 6.

18    In the reply, Petitioner re-asserts that Petitioner is seeking asylum, has no criminal

19    record, and their removal "is not final, not imminent, and not certain" because Petitioner filed an

20    appeal. <u>See</u> ECF No. 10. Petitioner additionally attaches a letter from their sponsor in Austin,

21    Texas, from the Director of Casa Marianella, "a shelter that serves immigrants, asylum-seekers,

22    and asylees." <u>Id.</u> at 3.  The Director asserts that Petitioner has successfully been approved to live

23    at the shelter if released and Casa Marianella requires residents to adhere to shelter rules, which

24    includes abstaining from alcohol or drugs, and participate in daily chores, while providing support

25    such as ensuring rides to ICE appointments and court dates, and English classes. <u>See id.</u> at 3-4.

26    / / /

27    / / /

28    / / /

## II. DISCUSSION

For the reasons explained herein, the undersigned will grant in part and deny in part Petitioner's petition for writ of habeas corpus, ordering the government to conduct a bond hearing, before an immigration judge in accordance with the requirements of <u>Singh v. Holder</u>, 638 F.3d 1196, 1208 (9th Cir. 2011) and denying the petition in all other respects.

### A.   <u>Immigration Detention</u>

The most important consideration to determine whether immigration detention is mandatory or discretionary, and the process afforded to the detainee to challenge such detention is what statute, and section of said statute, the individual falls under. <u>See</u> <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." <u>Avilez v. Garland</u>, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" <u>Id.</u> (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." <u>Id.</u> "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." <u>Id.</u> at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." <u>Id.</u> "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." <u>Id.</u> at 530–31.

Here, Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and concede that at the time the instant petition was filed, Petitioner had been detained for eleven months.[2] (ECF No. 9 at 2.) "Under . . . 8 U.S.C. § 1225, an alien who

---

[2] By the time this Order is issued, Petitioner will have been in detention for over twelve months. <u>See</u> ECF No. 7, pg. 1 ("He arrived . . . on or about December 18, 2024.").

1    'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated

2    as 'an applicant for admission.'" <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 287 (2018) (quoting 8 §

3    1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that

4    they may be admitted into the country consistent with U.S. immigration law." <u>Jennings</u>, 583 U.S.

5    at 287 (quoting 8 U.S.C. § 1225(a)(3)). "Section 1225(b)(1) applies to aliens initially determined

6    to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." <u>Jennings</u>, 583

7    U.S. at 287. Section "1225(b)(1) . . . authorize[s] the detention of certain aliens." <u>Id.</u>

8    
9    
10   
11   
> Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

12   > <u>Jennings</u>, 583 U.S. at 287

13   "[A]pplicants for admission may be temporarily released on parole 'for urgent

14   humanitarian reasons or significant public benefit.'" <u>Id.</u> at 288 (quoting 8 U.S.C. §

15   1182(d)(5)(A)) (citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). "The Attorney General [has]

16   interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for

17   asylum seekers who were initially subject to expedited removal but later transferred to full

18   removal proceedings after establishing a credible fear." <u>Padilla v. U.S. Immigr. & Customs Enf't</u>,

19   704 F. Supp. 3d 1163, 1168 (W.D. Wash. 2023) (citing <u>Matter of M-S-</u>, 27 I. & N. Dec. 509,

20   515–17 (2019)).

21   "[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit]

22   have grappled in piece-meal fashion with whether the various detention statutes may authorize

23   indefinite or prolonged detention of detainees and, if so, may do so without providing a bond

24   hearing.'" <u>Rodriguez v. Robbins</u> (<u>Rodriguez II</u>), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting

25   <u>Rodriguez v. Hayes</u> (<u>Rodriguez I</u>), 591 F.3d 1105, 1114 (9th Cir. 2010)). In <u>Zadvydas v. Davis</u>,

26   two noncitizens, who had been ordered removed but whose removal could not be effectuated due

27   to lack of a repatriation treaty or because their designated countries refused to accept them,

28   challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention

1    beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a

2    "statute permitting indefinite detention of an alien would raise a serious constitutional problem,"

3    the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits

4    an alien's post-removal-period detention to a period reasonably necessary to bring about that

5    alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively

6    reasonable six-month period of post-removal period detention, the alien was entitled to release if

7    he successfully demonstrated that there was 'good reason to believe there is no significant

8    likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062

9    (quoting Zadvydas, 533 U.S. at 701).

10           In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial

11   challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by

12   emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of

13   the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at

14   529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal

15   proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the

16   remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the

17   Board of Immigration Appeals, appeal takes an average of four months, with a median time that

18   is slightly shorter").[3]

19           In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention

20   pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond

21   hearings and determinations to justify their continued detention." Rodriguez v. Robbins

22   (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional

23   concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is

24   implicitly time-limited and expires after six months. Thereafter, the government's authority to

25   _____

26   [3]      Though the Supreme Court assumed, based on the government's brief in Demore, the
     average time of detention was less than six months, the government clarified in 2016 that for
27   1999-2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little
     more than a year." Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D.
28   Cal. Jan. 7, 2019) (citations omitted).

1    detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements

2    set forth in <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011).[4]  <u>Rodriguez II</u>, 715 F.3d at 1138–44.

3    In <u>Rodriguez III</u>, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b),

4    1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so

5    that noncitizens may challenge their continued detention as 'the period of . . . confinement

6    grows.'" <u>Rodriguez III</u>, 804 F.3d at 1089 (quoting <u>Diouf v. Napolitano</u> (<u>Diouf II</u>), 634 F.3d 1081,

7    1091 (9th Cir. 2011)).

8            In <u>Jennings v. Rodriguez</u>, the Supreme Court rejected the Ninth Circuit's

9    interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length

10   of mandatory detention" and reversed <u>Rodriguez III</u>, holding that the Ninth Circuit misapplied the

11   constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic

12   bond hearings every six months in which the Attorney General must prove by clear and

13   convincing evidence that the alien's continued detention is necessary." <u>Jennings</u>, 583 U.S. 296,

14   304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the]

15   constitutional arguments on their merits." <u>Id.</u> at 312. The Ninth Circuit, in turn, remanded the

16   case to the district court to consider the constitutional arguments in the first instance, but noted

17   that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any

18   process is constitutional or that those who founded our democracy precisely to protect against the

19   arbitrary deprivation of liberty would have thought so." <u>Rodriguez v. Marin</u>, 909 F.3d 252, 255,

20   256 (9th Cir. 2018).

21           Following <u>Jennings</u>, the Ninth Circuit upheld the "construction of § 1231(a)(6) to

22   require a bond hearing before an IJ after six months of detention for an alien whose release or

23   removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof

24   at such a bond hearing to justify an alien's continued detention." <u>Aleman Gonzalez v. Barr</u>, 955

25   _____

26   [4]     In <u>Singh</u>, the Ninth Circuit provided guidance as to the procedural requirements for the
     bond hearings. Specifically, "the government must prove by clear and convincing evidence that
27   an alien is a flight risk or a danger to the community to justify denial of bond." <u>Singh</u>, 638 F.3d at
     1208. Due process also requires a contemporaneous record of the bond hearings, such as a
28   transcript or audio recording. <u>Id.</u>

1   F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman

2   Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising

3   from the Third Circuit, Johnson v. Arteaga-Martinez, [596] U.S. [573], 142 S. Ct. 1827, 213

4   L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory

5   interpretation in Aleman Gonzalez," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir.

6   2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the

7   Government to provide bond hearings before immigration judges after six months of detention,

8   with the Government bearing the burden of proving by clear and convincing evidence that a

9   detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S.

10   at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

11           "[A]fter the Supreme Court's decisions in Jennings and Arteaga-Martinez, it

12   remain[ed] undetermined whether the Due Process Clause requires additional bond procedures

13   under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz,

14   which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond

15   hearing before an IJ at which the government would bear the burden of proof by clear and

16   convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due

17   process does not require the procedures Rodriguez Diaz would have us impose" because "Section

18   1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not

19   shown that these procedures violate due process, either facially or as applied." Id.

20           However, the Ninth Circuit has yet to take a position on whether due process

21   requires a bond hearing for noncitizens for whom detention is mandatory. See Martinez v. Clark,

22   36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens

23   detained under § 1226(c) is not before us today. And we take no position on that question."),

24   vacated and remanded on other grounds, 144 S. Ct. 1339 (2024); Avilez, 69 F.4th at 538

25   (declining to make a determination on whether due process required a bond hearing for noncitizen

26   detained under § 1226(c) and remanding to district court for consideration of due process claim).

27   The Ninth Circuit has recognized that "district courts throughout this circuit have ordered

28   immigration courts to conduct bond hearings for noncitizens held for prolonged periods under §

8

1226(c)" based on due process and noted that "[a]ccording to one such court order, the

'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at

some point—violate the right to due process.'" Martinez, 36 F.4th at 1223 (citation omitted).

**B.    Procedural Due Process**

1.    Bright-Line Rule

Petitioner asserts that "[d]etention without a bond hearing is unconstitutional when

it exceeds six months." ECF No. 1 at 8. Respondent contends that "detention under 1225(b)(1),

like detention under § 1226(c), 'has a definite termination point: the conclusion of removal

proceedings' and therefore, mandatory detention, without finding the individual poses a flight risk

or danger to the community, is constitutional. ECF No. 7, pg. 4 (quoting Jennings v. Rodriguez,

583 U.S. 281, 304 (2018)) (citing Demore v. Kim, 538 U.S. 510, 523-527 (2003)). Three circuit

courts of appeals have "reject[ed] a bright-line constitutional rule requiring a bond hearing after

six months of detention—or after any fixed period of detention—in the context of a

Congressional mandate, in the immigration context, to detain." Black v. Decker, 103 F.4th 133,

150 (2d Cir. 2024) (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v.

Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The undersigned will follow

this line of cases and declines "to adopt a presumption of reasonableness or unreasonableness of

any duration of detention." Black, 103 F.4th at 150 (internal quotation mark omitted) (quoting

German Santos, 965 F.3d at 211).

2.    *Demore*

Respondent contends that "Petitioner's detention is proper under § 1225(b)(2)(A),

because he is an applicant for admission who is not "clearly and beyond doubt" entitled to

admission," citing Demore v. Kim in support. ECF No. 7, pg. 4. However, Respondent concedes

that "multiple district courts have disagreed with their interpretation of § 1225 as relevant here."

Id. n. 2 (citing Romero v. Hyde, 2025 WL 2403827 (D. Mass. August 19, 2025).

As noted above, Demore rejected a facial challenge to mandatory detention under

8 U.S.C. § 1226(c) and "said nothing about whether due process may eventually require a

hearing." Black, 103 F.4th at 149. In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court

9

1   explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed.

2   Preap, 586 U.S. at 420. Furthermore, Demore does not directly address whether § 1225(b) as

3   applied to Petitioner is unconstitutional.

4          Although the Ninth Circuit has yet to take a position on whether due process

5   requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), the First, Second, and

6   Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness'

7   limitation upon the duration of detention . . . under [section 1226(c)]." Reid, 17 F.4th at 7

8   (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a

9   noncitizen's constitutional right to due process precludes his unreasonably prolonged detention

10  under section 1226(c) without a bond hearing"); German Santos, 965 F.3d at 209–10 (holding

11  that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-

12  applied challenges to their detention and that due process affords them a bond hearing once

13  detention becomes unreasonable). Additionally, "essentially all district courts that have

14  considered the issue agree that prolonged mandatory detention pending removal proceedings,

15  without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v.

16  Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation

17  omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

18         Based on the foregoing, the Court finds that unreasonably prolonged mandatory

19  immigration detention without an individualized bond hearing violates due process. The Court

20  now turns to whether Petitioner's detention has become unreasonably prolonged such that due

21  process requires a bond hearing.

22                              3.    *Lopez* Test

23         Courts in this circuit have taken various approaches to determining whether

24  procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No.

25  18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule

26  in § 1226(c) context); Banda v. McAleenan, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-

27  factor test that considers "(1) the total length of detention to date; (2) the likely duration of future

28  detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the

                                              10

1    detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood

2    that the removal proceedings will result in a final order of removal" in § 1225(b) context); Juarez

3    v. Wolf, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-

4    factor test that considers "whether the detention will exceed the time the petitioner spent in prison

5    for the crime that made him [or her] removable" and "the nature of the crimes the petitioner

6    committed" in addition to the six factors set forth above in § 1226(c) context (alteration in

7    original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021);

8    Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14,

9    2022) (applying Mathews v. Eldridge test to petitioner's due process claim requesting initial bond

10   hearing in § 1226(c) context).

11        This Court previously found that "[t]o determine whether § 1226(c) detention has

12   become unreasonable, the Court will look to the total length of detention to date, the likely

13   duration of future detention, and the delays in the removal proceedings caused by the petitioner

14   and the government." Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting

15   Mathews factors more suited to determining whether due process requires a second bond hearing

16   and rejecting other multi-factor tests). Although Lopez concerned mandatory detention under §

17   1226(c), the Court here finds Lopez's reasoning applies equally to mandatory detention under §

18   1225(b). Accordingly, the Court will apply the Lopez test.[5]

19                    *a.*    *Total Length of Detention to Date*

20        Petitioner has been in immigration detention since December 18, 2024, over a

21   year. Courts have found shorter lengths of mandatory immigration detention without a bond

22   hearing to be unreasonable. See, e.g., Black, 103 F.4th at 137–38 (affirming district court

23   judgment ordering bond hearing for petitioner detained seven months); Perera v. Jennings, No.

24   21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering

---

[5] In the petition, Petitioner applies the Mathews v. Eldridge, 424 U.S. 319 (1976) test, and alternatively, the multi-factor reasonableness test adopted by the Third Circuit in German Santos, 965 F.3d 203. See ECF No. 1, pgs. 9-13. Respondents do not address either in the response. Although the parties have not specifically addressed the Lopez factors, the Court will apply the Lopez test to the record currently before the Court.

individualized bond hearing for petitioner detained almost two months); Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months). But see De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 448–49 (D.N.J. 2019) ("As a general matter, courts in this District have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-Jennings.").

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for over a year. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

### b. Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211. Here, the record is not entirely clear about where Petitioner is in the process of removal, but it appears that Petitioner's application for asylum and application for relief from removal are still pending in the immigration court.

> The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country. § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a).

1

2

*Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020).

3

4

5

6

7

8

9

10

11

12

Although the Court recognizes that future events in this context are difficult to predict, the Court nevertheless finds that in the event Petitioner's applications for relief from removal are denied, Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding that appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding that appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

13

14

            c.      *Delays in Removal Proceedings Caused by Petitioner and Government*

15

16

17

18

19

Petitioner contends that their case "has already dragged on for almost a year," and nothing indicates that Petitioner themselves requested continuances nor caused any delay in those proceedings. Respondents do not provide information about why Petitioner's case has taken so long to reach the conclusion of proceedings. Accordingly, the Court finds that the delay factor weighs neither for nor against Petitioner.

20

            4.      <u>Weighing the Factors</u>

21

22

23

The length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,7 and the likely duration of future detention weigh in favor of finding continued detention unreasonable weigh in favor of Petitioner.

24

25

26

27

28

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him *without a bond hearing*." Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D.

13

1    Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189

2    (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has

3    a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal

4    orders are promptly executed, the Government's interest in detaining Petitioner without providing

5    an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that

6    Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir.

7    2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from

8    government custody, detention, or other forms of physical restraint—lies at the heart of the liberty

9    [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at

10   1207 ("We have also held, more generally, that an individual's private interest in 'freedom from

11   prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)).

12   Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and

13   due process requires that Petitioner be provided a bond hearing. Thus, the undersigned will grant

14   Petitioner's due process claim and request for a bond hearing before an immigration judge.

15                              **C.    Remedy**

16              In the petition, Petitioner requests this Court hold a hearing to "determine that

17   Petitioner's detention is not justified because the government has not established by clear and

18   convincing evidence that Petitioner presents a risk of flight or danger in light of available

19   alternatives to detention," or in the alternative, order a bond "hearing before an immigration judge

20   where . . . to continue detention, the government must establish by clear and convincing evidence

21   that Petitioner presents a risk of flight or danger[.]" ECF No. 1 at 18. Respondents contend that, if

22   the petition is granted, "the only appropriate relief is a bond hearing," where the government has

23   no burden to justify detention. See ECF No. 7, pgs. 4-6.

24              Here, the undersigned finds that a bond hearing before an immigration judge is

25   appropriate, "consistent with other post-Jennings cases." Lopez, 631 F. Supp. 3d at 882. See Doe

26   v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly

27   found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk

28   of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts

14

1  throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens

2  held for prolonged periods”))); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL

3  840253, at *4 (S.D. Cal. Feb. 13, 2018) (“The Court finds the IJ is uniquely qualified and situated

4  to make neutral administrative determinations about Petitioner’s eligibility for release on bond

5  and/or placement in a supervised release program[.]”).

6         According to Respondents, the Supreme Court “has repeatedly upheld detention

7  pending removal proceedings on the basis of a categorical, rather than individualized, assessment

8  that a valid immigration purpose warranted interim custody.” ECF No. 7, pg. 5 (citing Demore,

9  538 U.S. at 531; Flores, 507 U.S. at 305-09; Carlson, 342 U.S. at 538). Respondents further

10  contend that Courts have placed the burden on the Petitioner, citing Zadvydas v. Davis, 533 U.S.

11  678, 701 (2001) and Diaz, 53 F.4th at 1212 (9th Cir. 2022). However, none of these cases cited

12  by Respondents address the burden of proof for a bond hearing as applicable to Petitioner. Indeed,

13  in Diaz, the Ninth Circuit stated that their decision in Singh to require the government prove by

14  clear and convincing evidence that continued detention is justified was rooted in “general

15  principles of procedural due process.” Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022). The

16  Court distinguished Diaz’s situation from Singh’s because in Singh, the Court found Singh had

17  been subject to prolonged detention without any bond hearing, whereas Diaz had an initial bond

18  hearing, where he was represented by counsel, and had the opportunity to present “considerable

19  evidence.” Id. at 1212.  Here, as previously discussed, the undersigned finds that Petitioner has

20  been subject to prolonged detention without any bond hearing.

21         Accordingly, the Court further finds that general principles of procedural due

22  process require that the government here “prove by clear and convincing evidence that an alien is

23  a flight risk or a danger to the community to justify denial of bond” and that the bond hearing

24  must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir.

25  2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that “the BIA properly

26  noted that the government bore the burden to establish by clear and convincing evidence that

27  Martinez is a danger to the community” with respect to a bond hearing for a noncitizen detained

28  under § 1226(c)); Black, 103 F.4th at 159 (affirming district court’s order “requir[ing] the

15

government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos, 965 F.3d at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same); Martinez, 2019 WL 5968089, at *11 (same and collecting cases); see also Abubakar Abdul-Samed v. Warden of the Golden State Annex Det. Facility, No. 1:25-cv-00098-SAB-HC, 2025 LX 275135 (E.D. Cal. July 24, 2025). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

### III. CONCLUSION

2        Based on the foregoing, the Court HEREBY ORDERS that:

3        1.        The petition for writ of habeas corpus, ECF No. 1, is GRANTED IN PART

4   and DENIED IN PART. The petition is GRANTED as to Petitioner's procedural due

5   process claim and request for a bond hearing before an immigration judge. The petition is

6   DENIED in all other respects.

7        2.        Within thirty (30) days of the date of service of this order, Respondent

8   shall provide Petitioner with an individualized bond hearing before an immigration judge

9   that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir.

10  2011), and where "the government must prove by clear and convincing evidence that

11  [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at

12  1203. In the event Petitioner is "determined not to be a danger to the community and not

13  to be so great a flight risk as to require detention without bond," the immigration judge

14  should consider Petitioner's financial circumstances and alternative conditions of release.

15  Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

16        IT IS SO ORDERED.

17

18  Dated:  January 16, 2026

19  _____
    DENNIS M. COTA
20  UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

17